IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CANFOR CORPORATION, CANADIAN FOREST PRODUCTS, LTD., AND CANFOR WOOD PRODUCTS MARKETING, LTD.,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES,<br><br>        Defendant. | Court No. 23-00188 |

## COMPLAINT

1. Plaintiffs Canfor Corporation, Canadian Forest Products, Ltd., and Canfor Wood Products Marketing, Ltd. ("Plaintiffs" or collectively, "Canfor") by and through its counsel hereby alleges and states as follows:

## JURISDICTION

2. Canfor brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the 2021 administrative review of the antidumping duty order on certain softwood lumber products from Canada, Case No. A-122-857, issued by the International Trade Administration of the United States Department of Commerce ("Commerce").  *See Certain Softwood Lumber Products From Canada: Final Results of Antidumping Admin. Review and Final Determination of No Shipments*; *2021*, 88 Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023) ("*Final Results*"), and accompanying Issues & Decision Memorandum ("I&D Mem.").

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

## PARTIES AND STANDING

4. Canfor is a Canadian producer and exporter of subject softwood lumber. Canfor is therefore an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Canfor was also a party to the administrative proceeding that led to the determination that is being challenged herein, as Canfor was selected by Commerce as a mandatory respondent, responded to all of Commerce's questionnaires during the course of that proceeding, and submitted a case brief to Commerce in connection with that proceeding. Accordingly, Canfor has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

5. Defendant is the United States of America, acting by and through the U.S. Department of Commerce.

## TIMELINESS OF THE ACTION

6. On August 1, 2023, Commerce published in the Federal Register the *Final Results*. 88 Fed. Reg. at 50,106.

7. As the *Final Results* involve imports of softwood lumber from Canada, a free trade area country within the meaning of 19 U.S.C. § 1516a(f)(9)(A), the time limits for commencing an action before this Court do not begin to run until the 31st day after publication of the *Final Results* in the Federal Register, 19 U.S.C. § 1516a(a)(5). Thus, the statutory deadline for filing an appeal of the *Final Results* is thirty days from September 1, 2023.

8. Canfor timely filed a Notice of Intent to Commence Judicial Review with the United States Secretary of the USMCA Secretariat on August 21, 2023. Canfor timely filed a Summons, ECF No. 1, on September 6, 2023, within thirty days of September 1, 2023, in accordance with 19 U.S.C. § 1516a(a)(2)(A), 19 U.S.C. § 1516a(a)(5), 28 U.S.C. § 2636(c), and

Rules 3(a)(2) and 6(a) of the Rules of this Court.  Canfor timely files this complaint within thirty days of September 6, 2023.

## STATEMENT OF FACTS

9. On March 9, 2022, Commerce initiated the fourth administrative review of the antidumping duty order on certain softwood lumber from Canada. *Initiation of Antidumping and Countervailing Duty Admin. Reviews*, 87 Fed. Reg. 13,252, 13,254 (Dep't Commerce Mar. 9, 2022). The period of review ("POR") for this administrative review is January 1, 2021 to December 31, 2021. *Id*.

10. On April 29, 2022, Commerce selected Canfor as one of two mandatory respondents in this administrative review.  *See* Mem. to Robert Bolling, Acting Director, Office IV, Antidumping and Countervailing Duty Operations, from Maisha Cryor, Int'l Trade Analyst, Office IV, Antidumping and Countervailing Duty Operations, "Administrative Review of the Antidumping Duty Order on Certain Softwood Lumber Products from Canada: Respondent Selection," (Apr. 29, 2022) (on record of Case No. A-122-857).  Commerce issued initial questionnaires to Canfor the same day.  Letter from Robert Bolling, Program Manager, AD/CVD Operations, Office IV, to Donald B. Cameron, Morris, Manning & Martin, LLP (Apr. 29, 2022) (on record of Case No. A-122-857).  Canfor subsequently filed its responses to Commerce's initial questionnaire.  *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Softwood Lumber Products from Canada, Case No. A-122-857: Canfor's Sec. B-D Initial Questionnaire Resp.," (June 21, 2022) ("Canfor Secs. B-D Resp.") (on record of Case No. A-122-857); *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Softwood Lumber Products from Canada, Case No. A-122-857: Canfor's Sec. A Initial Questionnaire Resp.," (May 20, 2022) ("Canfor Sec. A. Resp.") (on record of Case No. A-122-

857). Canfor timely responded to supplemental questionnaires from Commerce on November 18, 2022, December 8, 2022, and December 30, 2022.

11.  In its questionnaire responses, Canfor explained the manner in which its Prince George sawmill is invoiced for electricity from BC Hydro, the electric power company in British Columbia. Canfor Sec. A. Resp. at A-18–A-19; Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Softwood Lumber Products from Canada, Case No. A-122-857: Canfor's Sec. A Suppl. Questionnaire Resp.," (Nov. 18, 2022) ("Canfor Suppl. Sec. A. Resp.") at 11–12 (on record of Case No. A-122-857). Canfor explained that BC Hydro supplies all of the electricity consumed by its Prince George sawmill and that the Prince George sawmill does not purchase electricity from affiliated parties. Canfor also detailed the manner in which BC Hydro invoices the Canfor facilities that share land in Prince George, British Columbia and how the Canfor entities split the electricity bill. Canfor Suppl. Sec. A. Resp. at 11–12.

12.  In its Section D Response, Canfor explained that it produces wood chips as a byproduct of its lumber production and sells those wood chips to both affiliated and unaffiliated purchasers. Canfor Secs. B-D Resp. at D-24–D-25. Canfor explained that during the POR it was obligated to sell all of the wood chips produced at two of its British Columbia sawmills pursuant to a long-term supply agreement at prices that do not represent the current market value for wood chips. *Id*. at D-25–D-26, Ex. D-14. Canfor therefore explained that these wood chip sales prices should not be used in a comparison to Canfor's sales of wood chips to Canfor's affiliated pulp mills for purposes of Commerce's analysis of affiliated party transactions under section 773(f)(2) of the Tariff Act of 1930, 19 U.S.C. § 1677b(f)(2). Canfor Secs. B-D Resp. at D-25–26.

13.  On January 23, 2023, Commerce issued a memorandum in which the agency explained it had adjusted Canfor's reported cost of manufacturing. *See* Mem. from Jeff

Pedersen, Case Analyst, Office IV, to The File, through Robert Bolling, Program Manager, Enforcement & Compliance, Office IV, "Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Results – Canfor Corp., Canadian Forest Prods. Ltd., and Canfor Wood Prods. Marketing Ltd.," (Jan. 23, 2023) (on record of Case No. A-122-857).  These cost adjustments related to Canfor's sale of wood chips to an unaffiliated party and purchases of electricity from an affiliated party, both of which Commerce claimed needed to be adjusted to reflect market prices.  *Id*. at 1–2.

14. On January 27, 2023, Commerce published the *Preliminary Results* in the Federal Register.  *Certain Softwood Lumber Products From Canada: Preliminary Results of Antidumping Duty Administrative Review;* 88 Fed. Reg. 5,306 (Dep't Commerce Jan. 27, 2023) ("*Preliminary Results*") and accompanying Decision Memorandum (Jan. 23, 2023) ("Prelim. Decision Mem.").

15. In the *Preliminary Results*, Commerce calculated a dumping margin of 5.25 percent for Canfor.  *Preliminary Results*, 88 Fed. Reg. at 5,306.  For the *Preliminary Results*, Commerce determined to use the average-to-transaction method to calculate Canfor's dumping margin based on the agency's finding that, under the "Cohen's *d* test," Canfor's U.S. sales exhibited a pattern of prices that differed significantly among purchasers, regions, or time periods.  Prelim. Decision Mem. at 10.

16. On February 27, 2023, Canfor timely filed its case brief.  *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Softwood Lumber Products from Canada, Case No. A-122-857: Canfor's Case Br. (Feb. 27, 2023) ("Canfor Case Br.").  Therein, Canfor argued that (1) in determining the market value for sales of wood chips Canfor made to affiliated parties, Commerce should disregard certain sales made pursuant to a long-term supply

contract that does not reflect market conditions during the POR; (2) Commerce should not adjust the reported cost of electricity at Canfor's Prince George sawmill because the record clearly indicated that Prince George sawmill's electric power was supplied by an unaffiliated electric utility; and (3) Commerce's application of its differential pricing methodology was contrary to law. *See* Canfor Case Br. at 1–20. With respect to argument (3), Canfor argued that Commerce erred in utilizing the average-to-transaction comparison methodology to determine Canfor's dumping margin. *Id*. at 13–20. Commerce's determination to use the average-to-transaction methodology was based on its use of the Cohen's *d* statistical analysis, which the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has confirmed to be legally flawed. Canfor argued that Commerce could not lawfully apply the flawed Cohen's *d* methodology in the *Final Results* or should, at the very least, modify the statistical analysis to correct elements of that analysis found unlawful by the Federal Circuit. *See id*. at 13–16.

17. For the *Final Results*, Commerce determined that Canfor's sales of wood chips to an affiliated party did reflect market conditions during the POR and, thus, continued to find an adjustment of Canfor's reported costs was necessary to reflect the market price of wood chips. I&D Mem. at 54–55. Commerce also determined that the Prince George sawmill's electricity was supplied by an affiliated reseller, and, therefore, adjusted the Prince George sawmill's cost of electricity to include the affiliated reseller's selling, general, and administrative expenses. *Id*. at 57–58. Finally, Commerce failed to revise its application of its differential pricing methodology. Commerce continued to apply the Cohen's *d* test as part of its differential pricing analysis, *see id*. at 18–33, and refused to consider record evidence of market fluctuations rebutting the presumption that the market fluctuations observed with the Cohen's *d* test were indicative of targeted dumping, *see id*. at 35–36. Commerce also disagreed with Canfor that it

had failed to distinguish a pattern of prices that differ significantly or explain why the average-to-average methodology cannot account for the identified price differences.  And Commerce disagreed that it was required by law to discontinue its use of "zeroing," *see id.* at 36–42.

18. Thus, in the *Final Results*, Commerce again calculated a dumping margin of 5.25 percent for Canfor.  *Final Results*, 88 Fed. Reg. at 50,107.

19. This appeal followed.

## STATEMENT OF CLAIMS

20. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

21. Commerce's *Final Results* is unsupported by substantial evidence and is otherwise not in accordance with law in the following respects:

### Count One

22. Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

23. Commerce's determination to include certain sales of wood chips sold by two of Canfor's sawmills to an unaffiliated party in its calculation of market value is unsupported by substantial evidence and is otherwise not in accordance with law.

### Count Two

24. Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

25. Commerce's determination that Canfor's Prince George sawmill purchased electricity from an affiliate is unsupported by substantial evidence and is otherwise not in accordance with law.

### Count Three

26.    Paragraphs 1 through 25 are incorporated by reference as if fully set forth herein.

27.    Commerce's application of its differential pricing methodology is unsupported by substantial evidence and is otherwise not in accordance with law.

### PRAYER FOR RELIEF

28.    Wherefore, Plaintiffs Canfor respectfully request that this Court:

a. hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law;

b. remand the *Final Results* to Commerce for a redetermination consistent with the judgment and finding of this Court; and

c. provide such other relief as this Court deems appropriate.

Respectfully submitted,

**MORRIS MANNING & MARTIN LLP**
1401 Eye Street, NW, Suite 600
Washington, D.C. 20005
(202) 216-4819

/s/ R. Will Planert
R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed
Stephen A. Morrison

*Counsel to Plaintiffs Canfor Corporation, Canadian Forest Products, Ltd., and Canfor Wood Products Marketing, Ltd.*

Dated: October 2, 2023